DENNIS JACOBS, Circuit Judge,
concurring in the judgment:
I concur in the judgment, but would deny the petition on a related ground.
If New York were challenging how FERC defines the statutory terms “local distribution” or “bulk-power system,” I would agree with the majority that the challenged regulations must be upheld under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). New York is not advancing a definitional challenge, however. Instead, it is making a procedural argument: that FERC cannot use a 100-kV threshold[1] as a good (but imperfect) proxy for classifying local distribution facilities because FERC must conclusively resolve “jurisdictional” issues before exercising regulatory authority.[2]
I would uphold the regulations on settled principles: (I) an agency is entitled to great deference when formulating “rules of procedure” and “methods of inquiry,” Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 543, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978); and (II) that deference is not diminished simply because the agency’s procedures bear on issues of jurisdictional significance, City of Arlington, Tex. v. FCC, - U.S. -, 133 S.Ct. 1863, 1874, - L.Ed.2d - (2013).
I
The majority resolves this case as a matter chiefly of statutory construction, but New- York’s challenge is not that the 100-kV threshold is a definition of “local distribution.” See Maj. Op. 953-56. No *961 where in its briefs does New York make a Chevron argument.[3] The Chevron argument is expressly disavowed: “Thus, the problem is not whether FERC can lawfully interpret a term.” Petitioners’ Reply Br. 4.
New York’s argument is surely procedural. The parties agree that: (1) the 100-kV threshold filters out most (but not all) local distribution facilities, see Oral Arg. Tr. 3:11-16, 7:3-7, 14:21-15:1; (2) the seven-factor test (either alone or in conjunction with additional considerations) adequately identifies local distribution facilities, id. 2:20-25, 19:11-17, 20:10-17; and (3) local distribution facilities not filtered out by the 100-kV threshold can request individualized adjudication applying the seven factors, id. 3:15-16, 18:2-14, 19:11—17.
New York’s objection is to the timing of these steps, and runs as follows: Because the 100-kV threshold is an imperfect filter, some local distribution facilities will become subject to FERC’s reliability regulations. And while those facilities may petition for individualized adjudication, some may choose not to. And as to that subset of facilities, FERC would be exercising its regulatory authority in excess of its jurisdiction.
That argument fails:
Absent constitutional constraints or extremely compelling circumstances the administrative agencies should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties.
Vermont Yankee, 435 U.S. at 543, 98 S.Ct. 1197 (citation and internal quotation marks omitted). The 100-kV threshold functions as a “rule[] of procedure” and a “method[ ] of inquiry,” filtering out facilities very likely to qualify as local distribution facilities (i.e., those below the threshold), and allowing FERC to concentrate its regulatory efforts on those facilities much less likely to qualify as local distribution facilities (ie., those above the threshold). Without some such sorting mechanism, FERC would have to determine the status of every facility individually, even those that fall clearly on one side or the other of the divide.
New York has identified no “constitutional constraints or extremely compelling circumstances” that would warrant imposing such a (wasteful) procedure. Vermont Yankee, 435 U.S. at 543, 98 S.Ct. 1197. “An agency enjoys broad discretion in determining how best to handle related, yet discrete, issues in terms of procedures and priorities.” Mobil Oil Exploration & Producing Se. Inc. v. United Distribution Cos., 498 U.S. 211, 230, 111 S.Ct. 615, 112 L.Ed.2d 636 (1991) (citations omitted). Local distribution facilities that generate more than 100 kV (or fall within one of the inclusions) may have an interest in avoiding regulation by FERC; but such interest is adequately protected by the opportunity to seek individualized adjudication after the application of the 100-kV threshold but before the imposition of any substantive regulations.[4]
*962 II
New York suggests that the deference owed to FERC’s procedures under Vermont Yankee is diminished because the challenged regulations bear on the- exercise of FERC’s jurisdiction. See Petitioners’ Reply Br. 4. Because “jurisdictional” facts determine FERC’s ability to exercise regulatory authority in the first place, New York argues, such facts must be adjudicated case by case.
As the Supreme Court explained in City of Arlington, the seeming distinction between “jurisdictional” and “nonjurisdictional” challenges to agency action is a “mirage.” 133 S.Ct. at 1868. While a “court’s power to decide a case is independent of whether its decision is correct,”- the same is not true for agencies. Id. at 1869 (emphasis added). For agencies, both the “power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires.” Id. (emphases added). “[T]he question in every case is, simply, whether the statutory text forecloses the agency’s assertion of authority, or not.” Id. at 1871.
City of Arlington was decided in the Chevron context. But the lesson of City of Arlington is that there is no subset of “big, important” jurisdictional questions that require more searching judicial review than “humdrum, run-of-the-mill” questions. 133 S.Ct. at 1868. That lesson would seem to be equally applicable whether the challenged agency action is statutory interpretation (as in City of Arlington) or the fashioning of procedural rules (as in this case). In both contexts, “when [agencies] act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires.” Id. at 1869.
I concur with the majority that the challenged regulations are entitled to deference and must be upheld; I would deny New York’s petition under the principle of deference in Vermont Yankee.

. I'use the term "100-kV threshold” to refer to that threshold as modified by the various inclusions and exclusions.

. Like the majority, I use the term "New York” to refer collectively to the petitioners.

. In the course of briefing, New York cites Chevron only twice: once in its general recitation of the standards that govern agency action, see Petitioners' Opening Br. 13, and once when characterizing one of FERC’s arguments, see Petitioners’ Reply Br. 3. New York does not address either step of the Chevron inquiry: (1) whether Congress has clearly defined "local distribution” or (2) whether FERC has advanced an interpretation that is substantively unreasonable. See Chevron, 467 U.S. at 842, 104 S.Ct. 2778.

. New York argues that the challenged regulations shift the burden of disproving FERC’s jurisdiction onto facilities. See Petitioners' Opening Br. 18. But as the majority correctly points out, New York cites no language in *962 the regulations that shifts the evidentiary burden in this way. See Maj. Op. 957. The only "burden” placed on facilities is to initiate the individualized adjudication process. That "burden” is distinct from the evidentiary burden of proof that would apply in each adjudication. FERC represents that, under its procedures, it would make "explicit findings as to any claimed local distribution exclusions.” Respondent’s Br. 36.